Good morning. May it please the Court, Justin Eichmann, appearing on behalf of Lund-Ross Constructors, Inc. Lund-Ross was the plaintiff in the adversary proceeding and then the appellant both here and before the bankruptcy appellate panel. Before I again just express my appreciation for the Court's time and consideration of this matter. That's important to Lund-Ross and they appreciate that as well. Because this is sort of the second round of appeal we've had here, Your Honors, I sort of have probably a two-step argument that needs to be made here. The Court will recall the bankruptcy court dismissed the matter on summary judgment, ultimately determining that under the facts presented there's no underlying obligation of the debtors here to Lund-Ross that could be accepted from discharge absent a claim to pierce the corporate veil, which was not pled. Now, we appealed that decision to the bankruptcy appellate panel and the bankruptcy appellate panel sustained the grant of that Lund-Ross's legal theory and probative evidence in support, on appeal at least, were absent from the summary judgment record before the bankruptcy court. And they used the Orion financial, there's a footnote there from the Orion financial case that a court, an appellate court will not, generally not consider arguments raised. So why is that, why is that incorrect? I think it's incorrect for two reasons. Number one, the panel's decision indicates that two things were not present before the, before the summary judgment, in the summary judgment record. Both Lund-Ross's legal theory and the probative evidence. First of all, the probative evidence has always been there. The probative evidence was alleged in the outlined, in all of the affidavits that was provided. And what is the probative evidence specifically? Is it the falsified lien waivers or is that what you're talking about? Generally correct. The allegations of fraudulent conduct by the individuals. That's, that's the, as far as you're concerned, the probative evidence here. Yes, the probative evidence. And it all frankly comes from an affidavit or two affidavits that were submitted to the bankruptcy court. And that probative evidence. Was there an actual claim made against the individual debtors? In the bankruptcy court or outside the bankruptcy court? Either one. Both. Both were made. So it's interesting. There, there was, there's a preexisting lawsuit that was filed both against Signature Electric and the two debtors who were the principals of Signature Electric. Was there a judgment? Not against the debtors because the debtors filed bankruptcy first. So the State prevented any further action against the debtors in State court. However, there was a judgment entered by default, frankly, against Signature Electric. Now because this case opened as a Chapter 7 case without assets, there was, there was no claims process that was started at the beginning of this bankruptcy case as there would have been perhaps in a Chapter 13 case or something where there would have been assets to actually distribute to claimants. So that's why Lund-Ross began its, its journey here in bankruptcy court in the adversary process. Number one, to establish its claim against these debtors. And number two, to try to accept that obligation from discharge. Now you concede you didn't plead that you were trying to pierce the corporate bail, correct? Absolutely. I will concede that. What, what was the legal argument? The legal argument for not, not pleading to pierce the corporate bail is that Nebraska law doesn't require it. So there's this two-step process in this adversary. First, I have to establish the underlying obligation, which is typically non-bankruptcy law or State law. And then I have to provide the, then the second step is to provide that obligation. There's some reason not to discharge it. How did you prove the first element? The first element is proved through fraud. There's five elements to a, this sort of fraudulent conduct. And when, what case did that come from, those five elements? In other words, did you, did you argue that the five elements in the bankruptcy court? I'll be honest with you. I would have to look in the brief. I specifically put the brief in the appendix. It's around page 300, Your Honor. And I did that because of the critique that I received from the bankruptcy appellate panel as to what was and wasn't argued to the That's the point, right? The BAP basically said you didn't make the legal argument. Let's even assume that you, they had the facts in there, but you failed to make the legal argument that you're making to us now. Why is that wrong? Sure. I believe that's wrong for, for, well, for one specific reason. If you read, and I would, I'd cite you to page 306 to 308 of the joint appendix. That's the portion of my brief in opposition to the summary judgment motion before, before the bankruptcy court, where I argue the fraudulent conduct and that as a result of that fraud, we, we have a claim that, that, that beats being discharged here. Do you have a debt, first of all, and it's not dischargeable? Were both of those made in that context, both of those arguments? We never got to the second context because the court decided, the bankruptcy court decided on that first element that there was nothing, there was no underlying obligation here of the debtors to Lund-Ross. I guess what I'm getting at in answer to your previous question, why is that wrong? What I did in front of the bankruptcy court is I made the, almost the exact same presentation that I made to the bankruptcy appellate panel with, with one big difference. The difference was I cited two cases to the bankruptcy court for the proposition that these types of fraud cases are routinely brought against individual principles, even though the benefit may have ran to their corporation, which is not a debtor. Okay? So I cited those two cases. One is, I think, an Ogden case, and I, off the top of my head, I don't remember the second case. The bankruptcy court took a look at those and decided that it would distinguish those two cases from the facts that we have before it. And, and it entered summary judgment. So when I went to the bankruptcy appellate panel, I made the exact same argument, and frankly, I believe the same legal argument. The only difference this time is I added two more cases, the White case and the Dallin case. And those were the two cases that I think the bankruptcy court criticized me for not presenting to the bankruptcy court. What I would tell you is my legal theory had never changed. From day one, from filing the adversary complaint, it, this was a fraud action, a tort action against these two individuals for their fraudulent conduct which caused the damage to Lundross. When, when the bankruptcy court basically took my two cases that I'd cited and, and said, no, those, those are distinguishable for all these reasons. The general rule is individual owners of an LLC are not liable for the LLC's debts. I then had to go further in my argument to the bankruptcy appellate panel. It's the same legal argument, but I had to point out to the bankruptcy appellate panel, reliance on that general rule by the bankruptcy court is just wrong, because there are exceptions. And one of those exceptions is where, where these individual directors, officers, agents of, of, of a corporate entity like an LLC, where their fraud, even though the benefit may go to the corporation or that LLC, where their fraud is what caused the damages, you do not have to bring an action to pierce the corporate veil. That tort action alone is good enough. So I guess my point is I don't think I made a different legal argument. I didn't present different probative facts. And I think if you read further on in that Orion case that the bankruptcy appellate panel cited for the proposition that it wasn't going to consider this on appeal for the first time, one of the exceptions there is, you know, if, if we're not changing the underlying facts or the, or the factual development, you know. The BAP essentially said you, you're raising a new argument before us that you didn't raise before the bankruptcy court. Correct. And I think I only raised new case law. I made the same legal argument. That's the difference from where I see it. And I think interestingly, Your Honors, the bankruptcy appellate panel, nowhere in the, in their opinion do they dispute the fact that White and Dallum are controlling cases. They, they're, they're valid and they would have prevented summary judgment from being entered. And I think even in the briefing that I've, I've read through from the debtors here, they're not arguing against the White and Dallum case either. I mean, I, I think that, that establishes that first level of the two-step analysis, which is the underlying obligation to Lund-Ross. And again, this is a summary judgment decision. So, you know, we're, we're not getting to weighing, weighing the evidence here. We're just talking about whether or not those affidavits contain enough of an allegation to withstand summary judgment. And I see I'm out of time. Again, I thank you for your time this morning and would ask that the district court's summary judgment grant be reversed. Thank you, Mr. Ackerman. Mr. Daniel. Good morning, Your Honor. May it please the court. My name is Scott Daniel. I represent Mr. and Mrs. Cannon in the bankruptcy and these appeals. Before I begin, I would like to address one thing that counsel just remarked. The, the White case and the Dallum case, both, both of those cases have been disputed by Mr. and Mrs. Buchanan throughout this. And frankly, they are distinguishable as well as those cases that the bankruptcy court distinguished from Ohio. They both, in both of those cases, the debtors acknowledged the debts. The Buchanans in this case have never acknowledged the debt that was Signature's death to, to Lund-Ross. They've never acknowledged that debt, unlike both in the White case, which was never defended because he took the Fifth Amendment. And the Dallum case that, that she acknowledged that she owed it, but that she just didn't defraud anyone. We dispute both of those cases apply here. In regard to what the bankruptcy court did, they acknowledged that for, for the procedure here, there's, it's a two-step process. Number one, as the, as counsel has remarked, you have to establish a debt. Because if you don't have a debt, there's nothing to accept from discharge. So that's the first, the first element. Is there a debt? And that's what the bankruptcy court relied upon. And so here, the, Mr. Buchanan signed in behalf of the company, but never personally. Correct. He, he, he never signed a lien waiver. In fact, those lien waivers were never submitted in order to get paid. They were paid, and then a lien waiver was given to, to whoever it was that was there to accept the check and was filled out by Lund-Ross, and it was signed this and send it back to us. So it wasn't in response for a payment. Did you agree with counsel that the fraud argument, the legal argument was made below? The, the fraud argument, they, they made the fraud argument. They, they pled it in their adversary proceeding, and so they argued it as well. But the, the court determined that there was not, there was never a debt for which the Buchanan's have multiple defenses, some of which the court examined. Did the bankruptcy court find that the only way to establish a debt was piercing the corporate bail? They found that, that was a way to, to do that. That's number one. Number two, the, in the claims process, Lund-Ross filed a $600,000 proof of claim. And the bank, by the bankruptcy rules, the, that claim, which is a, which is a, an acknowledgment that we believe that the Buchanan's owe Lund-Ross a debt of $600,000 is considered valid unless objected to. And it was objected to, and they had a hearing, and they had, they provided evidence, the trustee did, and the Buchanan's did, but Lund-Ross did not appear. They didn't respond to it. They didn't object to it. They didn't provide any evidence to support their debt, nor did they appeal it. Is that the basis of your race judicata argument? It is, Your Honor. It, it, the, the, that, that method, and whether you want to call it the claims process or the, the, the process for the adversary proceeding, it was to establish their, their debt, which the judge considered the evidence, and absent any evidence about fraud, at that point in the, the proceeding, he found that the debt was, was not a debt of the Buchanan's, but one of the corporation. And since they did not appeal that, which they had, there's a 14-day appeal process, which this Court has recently examined and said was mandatory, not jurisdictional. I think that's the zero blue case, which was decided, I think, in August of this year, said that, that because you want to accelerate bankruptcy proceedings and make it expedited and, and sort of to get on with it, to decide the issues, there's a 14-day appeal of all those, those kinds of orders, in addition, in particular, the order that the, the judge dis, disallowing the claim of Lund-Ross could have been appealed, but it was not. And so we, as I read that case and that rule, the, the debt, the, the debt determination of the, of the Buchanan's was decided against Lund-Ross. Let me ask you, do you agree with the BAP majority holding that there were new arguments made on appeal? There were, there, there were, there were new cases relied upon and new arguments made. I think that's probable. Counsel is suggesting that's, that's a different issue. There were New cases, but the same legal argument. And I heard you say earlier that the fraud issue, now whether it was, at what stage it was raised and whether that was appropriate, but that fraud was argued below. And it sounds to me like counsel's saying, well, fraud was also argued to the BAP, we just added some additional cases. Why isn't that argument correct? The argument that the Well, I think the BAP found that, look, we're not going to consider this for the first time on, on appeal. And counsel is suggesting I, I think I just added new cases. This is not the argument Right. And I, as, as I recall, the BAP, our response was they're not going to consider those cases below. But they had considered, because the, because the bankruptcy court had considered it, the, the issues that, the factual issues regarding who did what and who said what to who, the, the Buchanan's had told Lundross that they couldn't bond this job. The Buchanan's had told the secretary for Lundross that they needed these payments in order to make payments to our, to their subcontractors, all of which might be disputed. But, but the judge, the bankruptcy judge reviewed and considered all of those things. And as I recall, the, the bankrupt, bankruptcy appellate panels consideration, they added those two other Nebraska cases in there to, to support what they were arguing for, for the Ohio cases he argued before the bankruptcy, bankruptcy court. So I, I don't believe that he, the bankruptcy appellate panel was saying they were arguing some new theory, but they had just added some authority below that, that the bankruptcy court didn't consider, is, is how I recall their order. The proof of claim, the issue goes to, and whether you call it res judicata or as the bankruptcy court said, we've all, we've decided that there is no debt. Why would it have, why would it have been inappropriate for them to consider the new precedent raised on the same issue? I don't know that it would have been particularly inappropriate for, for them to, to consider. Would it be inappropriate for this court to consider those precedents? No, and I think it's been cited to you as well. The, the White case and the Dalham case have both been cited to you. And our response to that is they're equally distinguishable and equally inapplicable because in both of those cases, the, the, and they're factually distinct from this one. But in both of those cases, the, the debt was acknowledged by the, by the debtor, which unlike here, the debt's been disputed from day one. So how does res judicata apply here? Well, the res judicata, the, the, when you went through the whole process of, of having the, the hearings on whether or not there was a debt owed by the Buchanan's to, to Lund-Ross in the debt proof of claims process, the, the court made a determination after a hearing and notice to everyone. And there were actually one of the, the creditors did show up and there was testimony given and the, the Buchanan's provided evidence as well. And the court made a determination that these were all corporate debts, not debts of the Buchanan's. And, and that's the first element when we get to the adversary proceeding. You have to show that there's a debt. And Judge Saladino had decided that, I've already, I've already heard that. I've already decided that this was corporate debts. These were not debts of the Buchanan's. And he granted summary judgment. My time is up. I'll answer any additional questions and I appreciate your time. I don't see any. Thank you, Mr. Daniel. Thank you. Thank you also, Mr. Eichmann. The court appreciates both counsel's profession.